United States District Court
Southern District of Texas
**ENTERED**
March 05, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

JOHN ALFRED GRIMES      §
     §
VS.      §      CIVIL ACTION NO. 5:22-CV-12
     §
DR. JAMES FITTS *et al.*      §

## REPORT AND RECOMMENDATION OF
## THE UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendants Dr. James Fitts and Assistant Warden Sean Marshall's motion for summary judgment. (Dkt. No. 116). This motion was referred to the Undersigned by United States District Judge Marina Garcia Marmolejo for a report and recommendation. (Dkt. No. 125). Plaintiff John Alfred Grimes has filed a response in opposition, (Dkt. No. 130), and a cross-motion for partial summary judgment in his favor, (Dkt. No. 131). Having carefully reviewed the parties' arguments, the record and applicable authorities, the Undersigned recommends Defendants' summary judgment motion, (Dkt. No. 116), be **GRANTED** in its entirety. The Undersigned further recommends Plaintiff's motion for partial summary judgment, (Dkt. No. 131), be **DENIED**.

## I. PROCEDURAL HISTORY

On March 2, 2022, Plaintiff John Alfred Grimes ("Grimes"), a state inmate proceeding *pro se* and *in forma pauperis*, filed this civil rights complaint under Title 42 U.S.C. § 1983. (Dkt. No. 1). On March 16, 2022, Grimes filed a supplement to his complaint. (Dkt. No. 8). On March 30, 2022, the district judge referred the complaint and supplement to the Undersigned for judicial screening of Grimes' claims. (Dkt. No.

14). Subsequently, Grimes filed an amended complaint and a more definite statement. (*See* Dkt. Nos. 21, 23, 48, 52, 54, 55, 58). On September 23, 2022, the Undersigned issued his report and recommendation. (Dkt. No. 67).

Grimes filed nineteen objections to the report and recommendation, and on February 6, 2023, the district judge issued an order addressing them. (Dkt. No. 78). In her order, the district judge determined Grimes' deliberate indifference claim against Dr. James Fitts ("Dr. Fitts") and retaliation claim against Assistant Warden Sean Marshall ("Warden Marshall") survived judicial screening. (*Id*.). Thereafter, on March 3, 2023, Dr. Fitts and Warden Marshall filed an answer to Grimes' amended complaint. (Dkt. No. 89).

On April 14, 2023, a mediated settlement conference was held before United States Magistrate Judge John A. Kazen. (Min. Ent. Apr. 14, 2023). The parties did not reach a settlement agreement. (*Id*.). On September 29, 2023, Dr. Fitts and Warden Marshall filed their pending motion for summary judgment, asserting there are no genuine issues of material fact for trial. (Dkt. No. 116). This motion was referred to the Undersigned by the district judge for a report and recommendation. (Dkt. No. 125). On January 10, 2024, the Undersigned issued his report and recommendation. (Dkt. No. 126).

On January 22, 2024, it was brought to the Court's attention that on October 24, 2023, Grimes filed a response in opposition, (Dkt. No. 130), and a cross-motion for partial summary judgment in his favor, (Dkt. No. 131). Due to a clerical error, Plaintiff's filings were not docketed until after the Undersigned issued his report and

recommendation, (Dkt. No. 126). Therefore, on January 22, 2024, the Undersigned rescinded his report and recommendation. (Dkt. No. 129).

On February 13, 2024, Dr. Fitts and Warden Marshall filed a response to Grimes' motion for partial summary judgment. (Dkt. No. 137).

To avoid unnecessary duplications, the parties' relevant arguments and factual allegations will be set forth below under each specific claim for relief. Generally, Grimes alleges Dr. Fitts was aware of his complaints of experiencing symptoms of uncontrollable hunger, dizziness, involuntary movements in his sleep, a possible seizure, as a well as injuries he incurred as a result of falling from his top bunk, and that his request for treatment and a bottom bunk were effectively ignored. (*See* Dkt. Nos. 1, 2, 8, 18, 19, 21, 32, 58). Regarding Warden Marshall, Grimes alleges Warden Marshall retaliated against him for filing grievances by prolonging his confinement in restrictive housing without justification. (*See* Dkt. Nos. 2 and 58).

In their motion for summary judgment, Defendants assert Dr. Fitts was not deliberately indifferent to Grimes' medical needs, nor has Grimes demonstrated any retaliatory motive or intent by Warden Marshall or that his actions violated clearly established law. (Dkt. No. 116 at 14 and 17). In Grimes' response to Defendants' motion for summary judgment, (Dkt. No. 130). Grimes argues Defendants can be found liable and are not entitled to qualified immunity. In Grimes' cross-motion for partial summary judgment in his favor, (Dkt. No. 131), Grimes states "there is no genuine issue to any material fact" relating to his claims.[1]

---

[1] Additionally, Grimes asserts his constitutional rights of due process under the Fourteenth Amendment were violated by Warden Marshall. (Dkt. No. 131 at 1). The Court has discretion whether

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 56

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). A factual dispute is material if it "might affect the outcome of the suit under the governing law," and it is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To properly support a motion for summary judgment, the moving party must identify portions of "the pleadings, depositions, answers to interrogatories, and admissions on file" which demonstrate the absence of a genuine issue of material fact. *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). This absence is shown by exhibiting that the record contains no support for the non-moving party's claim. *Id.*

---

to consider a claim first asserted in a motion for summary judgment. *Martinez v. Prudential Ins. Co. of Am.*, 615 F. Supp. 3d 519 (S.D. Tex. 2022), *appeal dismissed*, No. 22-40538, 2022 WL 18776211 (5th Cir. Nov. 15, 2022). Courts in this circuit routinely decline to consider new claims asserted at the summary-judgment stage of litigation. For this reason, the Undersigned will not consider Grimes' newly asserted allegations. *See Garza v. City of La Porte*, 160 F.Supp.3d 986, 993 (S.D. Tex. 2016) (holding state-law claims raised by the plaintiff for the first time in his motion for summary judgment were not properly before the court since "a party cannot use a motion for summary judgment to raise new claims"); *United States ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F.App'x 521, 522 (5th Cir. 2012) ("We also conclude that the district court did not err in denying DeKort's motion for partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint."); *see Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 498-99 (5th Cir. 1998) (agreeing with the district court that the plaintiffs did not plead a joint ownership copyright claim and holding the district court did not abuse its discretion in denying a plaintiff leave to amend to add a joint ownership claim").

To rebut a properly supported motion for summary judgment, the non-moving party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Atkins v. Szymczak*, 710 Fed.Appx. 223, 224 (5th Cir. 2018) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)). The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991). Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If the nonmovant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Stahl*, 283 F.3d at 263.

### C. Qualified Immunity

Dr. Fitts and Warden Marshall assert their entitlement to qualified immunity. (Dkt. No. 116 at 3). Government officials performing discretionary duties can respond to § 1983 claims by asserting qualified immunity. *Rich v. Palko*, 920 F.3d 288, 293–94 (5th Cir. 2019) (citing *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013)).

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Government officials are given "breathing room to make reasonable but mistaken judgments" and "all but the plainly incompetent or those

who knowingly violate the law" are protected. *Stanton v. Sims*, 571 U.S. 3, 6 (2013). Qualified immunity "represents the norm, and courts should deny a defendant immunity only in rare circumstances." *Rich*, 920 F.3d at 294; *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019).

The usual summary judgment burden of proof is altered in the case of qualified immunity defense. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity alleging the actions taken were in good faith and within the scope of discretionary authority, the burden is on the plaintiff to establish the official's conduct violated clearly established law. *Id*. Plaintiff cannot rest on pleadings but instead must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Id*.; *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489–90 (5th Cir. 2001).

To survive summary judgment on the issue of qualified immunity, a plaintiff must satisfy two independent inquiries. First, whether viewing the summary judgment evidence in the light most favorable to plaintiffs, the defendants violated the alleged victim's constitutional rights. *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007); *Delaughter v. Woodall*, 909 F.3d 130, 137–38 (5th Cir. 2018). If the Court determines "that the alleged conduct did not violate a constitutional right, [the] inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009). If there is a genuine dispute of material fact regarding whether there was a constitutional rights violation, the Court then asks whether defendants' actions

were objectively unreasonable in light of the clearly established law at the time of the constitutional violation. *Freeman*, 483 F.3d at 411; *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (The second prong requires courts to "ask whether the right was clearly established—that is, whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'") .

If the Court answers both questions in the affirmative, the government official is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410. Courts are permitted to exercise discretion in determining the order in which to analyze the two-part qualified immunity test. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020).

At this stage, a court's qualified immunity inquiry requires a court "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Beltran v. City of El* Paso, 367 F.3d 299, 302 (5th Cir. 2004). "If, upon viewing the evidence in the light most favorable to the [plaintiff], reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir.1997). This inquiry is an objective one, not dependant on the particular officer's subjective beliefs. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

### III. SUMMARY JUDGMENT EVIDENCE

When analyzing a motion for summary judgment, "[t]he court need consider only the cited materials, but it may [also] consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Dr. Fitts and Warden Marshall offer the following competent

summary judgment evidence:

> Exhibit A: TDCJ Grievance Records for Plaintiff John Grimes, TDCJ #01964424, for the time period of November 1, 2020, to November 1, 2021, with Business Records Affidavit (Dkt. No. 117-1).

> Exhibit B: TDCJ Classification Records for Plaintiff John Grimes, TDCJ #01964424, with Business Records Affidavit (Dkt. No. 116-1).

> Exhibit C: TDCJ Patient Liaison Records for Plaintiff John Grimes, TDCJ #01964424, for the time period of November 1, 2020, to November 1, 2021, with Business Records Affidavit (Dkt. No. 116-2).

> Exhibit D: TDCJ Medical Records for Plaintiff John Grimes, TDCJ #01964424, for the time period of November 1, 2020, to November 1, 2021, with Business Records Affidavit (Dkt. No. 117-2).

> Exhibit E: TDCJ/UTMB Correctional Managed Care Health Services Archives Records for Plaintiff John Grimes, TDCJ #01964424, with Business Records Affidavit (Dkt. No. 117-3).

> Exhibit F: Declaration of Dr. James Fitts, M.D. (Dkt. No. 124-1).

(Dkt. No. 116 at 1). Although Grimes is proceeding *pro* se, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

It is true "pleadings of *pro se* litigants, including oppositions to motions for summary judgment, must be construed liberally and reviewed less stringently than those drafted by attorneys." *Thorn v. McGary*, 684 F. App'x 430 (5th Cir. 2017). But "the traditional leniency afforded to a *pro se* plaintiff does not excuse [Grimes] from [his] burden of opposing summary judgment through the use of competent summary

judgment evidence.'"[2] Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record to place that evidence properly before the court.[3]

Adhering to this guidance from the Fifth Circuit, the Undersigned considers Grimes' verified complaint, (Dkt. No. 1), and more definite statement, (Dkt. No. 58),— in which he swore under penalty of perjury that the allegations contained therein were true and correct—competent summary judgment evidence.[4] The Undersigned also considers Grimes' supplement, (Dkt. No. 8), which the district judge incorporated into Grimes' verified complaint, competent summary judgment evidence. (*See* Dkt. No. 10 at 3). Further, the Undersigned will consider Grimes' additional pleadings competent summary judgment evidence to the extent that such pleadings comport with the requirements of Federal Rule of Civil Procedure 56(c). *See* Fed. R. Civ. P. 56(c)(3); *See also King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

## IV. ANALYSIS

In her February 6, 2023, order, the district judge determined Grimes' claim based on his rights to religious exercise did not survive judicial screening. (Dkt. No.

---

[2] *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (citing *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that *pro se* plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")).

[3] *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *see also E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require pro se parties to fundamentally abide by the rules that govern the federal courts. Pro se litigants must properly . . . present summary judgment evidence[.]") (cleaned up).

[4] *See Hart v. Hairston*, 343 F.3d 762, 764 n.1 (5th Cir. 2003) (finding that inmate's declaration which was sworn to under penalty of perjury was competent summary-judgment evidence); *Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir. 2017) ("Declarations and verified pleadings that are dated and made on penalty of perjury ... constitute 'adequate summary judgment evidence.'") (quoting *Stewart v. Guzman*, 555 F. App'x 425, 431 (5th Cir. 2014) (per curiam)); *Cantwell v. Sterling*, 788 F.3d 507, 509 n.1 (5th Cir. 2015) ("The ordinary rules of civil procedure are applicable in prisoner suits. [The plaintiff] offered his testimony under penalty of perjury and declared it to be true and correct, so it must be credited on summary judgment.").

78). To the extent Grimes realleges aspects of this claim in his response to Defendants' motion for summary judgment, the Undersigned will not consider them here. (*See* Dkt. No. 130 at 1–2).

### A. Grimes' Deliberate Indifference Claim Against Dr. Fitts

While an inmate has no constitutional right to the best medical treatment or the treatment that he prefers,[5] the Supreme Court has held that the Eighth Amendment requires "inmates receive adequate . . . medical care." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To prevail on a medical care claim, plaintiffs must establish that deprivation of appropriate medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference is "an extremely high standard to meet." *Zaunbrecher v. Gaudin*, 641 Fed.Appx 340, 344 (5th Cir. 2016) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). An official is deliberately indifferent to a plaintiff's need if the official (a) knows that the inmate faces "a substantial risk of serious harm" and (b) "disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. To 'know' of the risk, the official must (a) "be aware of facts from which the inference could be drawn" that such a risk exists, and (b) "draw the inference" that said risk does in fact exist. *Id.* at 837. Serious harm isn't just any harm: the medical need must be "so apparent that even laymen would recognize that care is required." *Rogers v. Jarrett*, 63 F.4th 971, 976 (5th Cir. 2023)

---

[5] *See e.g., Baughman v. Garcia*, 254 F. Supp. 3d 848, 877–88 (S.D. Tex. May 26, 2017) (noting that it is "well established" that an inmate has no right to the treatment he prefers or the best treatment available).

(quoting *Gobert*, 463 F.3d at 345 n.12).

A showing of deliberate indifference "requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Grogan v. Kumar*, 873 F.3d 273, 278 (5th Cir. 2017) (quoting *Gobert*, 463 F.3d at 346). "Mere 'negligence' does not constitute deliberate indifference, 'nor does a prisoner's disagreement with his medical treatment, absent extraordinary circumstances.'" *Id*. Allegations of unsuccessful medical treatment, medical malpractice, or mistaken judgment are similarly insufficient to evidence deliberate indifference to serious medical needs. *Young v. McCain*, 760 F. App'x 251, 256 (5th Cir. 2019).

Here, Grimes alleges Dr. Fitts has acted with deliberate indifference to his serious medical needs. (*See* Dkt. Nos. 1, 2, 8, 18, 19, 21, 32, 58). As the basis for this claim, Grimes alleges Dr. Fitts has provided inadequate treatment for the following symptoms: "seizures," "[falling] off [his] top bunk twice," "dizziness," a weight of "300 lbs," an "organ or intestine poking out from straining to climb the top bunk," and a "vitamin D deficiency." (*See id*.; *See also* Dkt. No. 1-3 at 3–4).

As a threshold matter, the Undersigned notes Federal Rule of Civil Procedure 56 "does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). However, considering Grimes' *pro se* status—and the necessity of ensuring there has

11

been no violation of his constitutional rights—the Undersigned has undertaken an extensive review of the record. Hence, each symptom Grimes alleges Dr. Fitts inadequately treated is addressed in turn.

### 1. Grimes' Alleged Seizures

According to TDCJ Medical Records for Plaintiff, Grimes submitted two "I-60" inmate requests on June 9, 2021. (Dkt. No. 117-2 at 72–73). In the first I-60, Grimes reports "involuntary movements during sleep and seizure." (*Id*.). In the second I-60, Grimes writes "I need to report another seizure." (*Id*.). Grimes was seen by Dr. Fitts for these complaints the next day. (*Id*. at 36–37). Dr. Fitts noted no history of seizure disorder in Grimes' intake forms, or his medical records, and that Grimes did not appear to be in a postictal state (a period that begins when a seizure subsides and ends when the patient returns to baseline). (*Id*.; *see also* Dkt. No. 116 at 9). Dr. Fitts noted no specific new measures at that time. (*Id*.; *see also* Dkt. No. 116 at 9).

In Grimes' response to Defendants' motion for summary judgment, Grimes references the same inmate requests filed on June 9, 2021, but states "Dr. Fitts refused to treat him." (Dkt. No. 130 at 6). Grimes' claim is discounted, as mentioned above, by the TDCJ Medical Records for Plaintiff showing Grimes was seen by Dr. Fitts for these complaints the next day. (Dkt. No. 117-2 at 72–73).

### 2. Grimes' Alleged Falls from his Top Bunk, Necessity for a Bottom Bunk, Dizziness, Bulging Organs and Weight

According to TDCJ Medical Records for Plaintiff provided by Defendants, on May 19, 2021, Grimes submitted a sick call request. (Dkt. No. 117-1 at 14). This sick call request represents the earliest date of record Grimes discusses falling from his

top bunk. (*Id*.) In the sick call request, Grimes states he is unable to climb to the top bunk due to his weight, medications and the fact there is no ladder. (*Id*.) The sick call request received a medical reply on the same day it was submitted, noting Grimes would be scheduled to be seen by a medical provider. (Dkt. No. 117-2 at 76). Grimes was seen by Dr. Fitts for these complaints two days later. (*Id*. at 42–43). Dr. Fitts noted no specific new measures at that time. (*Id*. at 42–43) Dr. Fitts' assessment was that he was unable to modify Grimes' restrictions to include a bottom bunk only restriction, based on the availability of bottom bunks and the comparative medical needs of the entire inmate population at the Cotulla Unit. (*Id*.; *See also* Dkt. No. 116 at 8).

On May 27, 2021, Grimes was seen by Dr. Fitts for complaints of an abdominal wall hernia. (Dkt. No. 117-1 at 15–16). Dr. Fitts' assessment was a suspected abdominal muscle strain and Grimes was prescribed ibuprofen for pain. (*Id*.).

On May 31, 2021, Grimes submitted a sick call request stating his "intestine is still poking out, and [that] climbing [the] upper bunk is causing pain." (Dkt. No. 117-2 at 39). Grimes was seen by Dr. Fitts for this request two days later. (*Id*.). Dr. Fitts noted no new specific measures at that time and his assessment was that Grimes had no true need for a bottom bunk only restriction. (*Id*.).

On June 10, 2021, Grimes was seen by Dr. Fitts for his alleged seizure activity, as detailed above. In addition, there was no indication Grimes had a medical need for a bottom bunk only restriction. (Dkt. Nos. 116 at 9–10 and 117-2 at 36–37).

On June 26, 2021, Grimes submitted a sick call request for complaints of back

pain, leg and knee pain, swelling in his knees, abdominal strain/hernia, his weight and his request for a bottom bunk only restriction. (Dkt. No. 117-2 at 71). The sick call request received a medical reply on the same day it was submitted, noting Grimes would be scheduled to be seen by a medical provider. (*Id*.). Grimes was seen by Dr. Fitts for this request two days later. (Dkt. No. 117-2 at 32–33). Grimes presented with no ambulatory problems, his back was unremarkable (normal), and he had no neurological or circulatory problems. (*Id*.). Dr. Fitts noted his assessment that he was unable to modify Grimes' restrictions to include a bottom bunk only, due to none being available at the Cotulla Unit. (*Id*.).

On July 20, 2021, Grimes was seen by Dr. Fitts for complaints of his prescribed medication not relieving pain, swelling in his left leg above the knee, "knees crack as [he] comes down off the [top] bunk," dizziness, back pain, knee pain, his weight, and involuntary movements in his sleep. (Dkt. No. 117-2 at 30–31). Dr. Fitts noted there was no obvious swelling observed at this encounter and his assessment was bilateral lower extremity pain and swelling was not apparent. (*Id*.). The chief of nursing concurred with his assessment. (*Id*.). Dr. Fitts prescribed Grimes hydrochlorothiazide as a form of treatment for hypertension. (*Id*.).

On November 3, 2021, Grimes requested a bottom bunk review. (Dkt. No. 18-2). Grimes was seen by Dr. Fitts for this request five days later. (Dkt. No. 117-3 at 11–12). Grimes presented with no new symptoms. (*Id*.). Dr. Fitts noted his suspected assessment that Grimes had no true need for a bottom bunk only restriction. (*Id*.).

Dr. Fitts attached to his summary judgment motion a declaration, made under

penalty of perjury, addressing Grimes' necessity for a bottom bunk. (Dkt. No. 124-1). In the declaration, Dr. Fitts affirms that, based on his review of Grimes' medical records and his own direct examination of Grimes, there is no indication that Grimes has a medical need for a bottom bunk. (*Id.*). Dr. Fitts also affirms there are no available bottom bunks at the Cotulla Unit as of September 23, 2023. (*Id.*).

### 3. Grimes' Alleged Vitamin D Deficiency

On May 28, 2021, Grimes submitted grievance #2021117455 stating he is currently vitamin D deficient. (Dkt. No. 1-3 at 7–8). Following an initial response, Grimes requested appellate review. (Dkt. No. 1-3 at 7–8). The appellate review response, signed September 23, 2021, noted a review of Grimes' most recent labs did not show a vitamin D deficiency." (*Id.*).

### 4. Dr. Fitts' Conduct Did Not Violate a Constitutional Right

As a result of the Undersigned's global review of all Grimes' symptoms and subsequent treatment by Dr. Fitts, the record and facts show that as a matter of law Dr. Fitts did not act with deliberate indifference to Grimes' serious medical needs. Grimes' pleadings and exhibits attached thereto do not demonstrate Dr. Fitts "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."" *Grogan*, 873 at 278 (5th Cir. 2017) (quoting *Gobert*, 463 F.3d at 346).

The medical records filed by Dr. Fitts clearly reveal Grimes received an abundance of medical care during the time period made the basis of this suit, and

they rebut Grimes' allegations of deliberate indifference.[6] *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). Grimes was seen by Dr. Fitts seven (7) times between May 21, 2021, and November 8, 2021. (Dkt. No. 117-2). On all seven (7) occasions, Grimes presented with no abnormalities, no apparent distress, stable vital signs, and appeared healthy.[7] The Undersigned notes after submitting each sick call request, Grimes was seen by Dr. Fitts within a couple of days. Assuming, *arguendo*, that Grimes was at substantial risk of serious harm and Dr. Fitts was aware of that risk, the record does not support a finding that Dr. Fitts exhibited disregard of said risk.

Grimes submitted no new rebuttal evidence with his response to Defendants' motion for summary judgment. (Dkt. No. 130-1). Instead, Grimes attached grievance forms and medical records previously submitted to the Court. (*Id.*) In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

---

[6] *See* Exhibit A: TDCJ Grievance Records for Plaintiff John Grimes, TDCJ #01964424, for the time period of November 1, 2020, to November 1, 2021, with Business Records Affidavit (Dkt. No. 117-1); Exhibit B: TDCJ Classification Records for Plaintiff John Grimes, TDCJ #01964424, with Business Records Affidavit (Dkt. No. 116-1); Exhibit C: TDCJ Patient Liaison Records for Plaintiff John Grimes, TDCJ #01964424, for the time period of November 1, 2020, to November 1, 2021, with Business Records Affidavit (Dkt. No. 116-2); Exhibit D: TDCJ Medical Records for Plaintiff John Grimes, TDCJ #01964424, for the time period of November 1, 2020, to November 1, 2021, with Business Records Affidavit (Dkt. No. 117-2); Exhibit E: TDCJ/UTMB Correctional Managed Care Health Services Archives Records for Plaintiff John Grimes, TDCJ #01964424, with Business Records Affidavit (Dkt. No. 117-3); Exhibit F: Declaration of Dr. James Fitts, M.D. (Dkt. No. 124-1).
[7] *See* Dkt. No. 117-1 at 16, 18, 21, 23, 61–63, 65 and Dkt. No. 117-2 at 31, 36, and 43.

The Supreme Court has recognized whether a particular form of treatment is necessary "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. Unsuccessful medical care does not demonstrate deliberate indifference or a violation of the Eighth Amendment. *See Gobert*, 463 F.3d at 346. Even if a lapse in professional judgment occurred, any such failure would amount to no more than mere negligence or malpractice, and not a constitutional violation. *See Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). It is clear there is disagreement between Grimes and Dr. Fitts over the level of care he has received; but a prisoner's disagreement with a health care provider's assessment is insufficient to establish deliberate indifference. *See Gobert*, 463 F.3d at 346.[8] Accordingly, because Grimes does not establish he was denied care with deliberate indifference in violation of the Eighth Amendment, Dr. Fitts is entitled to qualified immunity and summary judgment in his favor. *See Pearson*, 555 U.S. at 236.

## B. Retaliation Claim Against Warden Marshall

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). "A prison official may not retaliate against or harass an inmate for exercising the

---

[8] *See also Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir. 1995); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999) (an inmate's disagreement with the type of medical treatment ultimately decided upon does not state a claim for Eighth Amendment indifference to serious medical needs); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) ("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.").

right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected inmates." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.*

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Mere conclusory allegations of retaliation will not withstand

a summary judgment challenge. *Woods*, 60 F.3d at 1166. Instead, the inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id*.

At the pleading stage, "to ensure the Court's ultimate findings are clear," the district judge concluded Grime's retaliation claim against Warden Marshall survived judicial screening. (Dkt. No. 78 at 6–8). Grimes' allegations relating to this claim initially appear in his more definite statement. (Dkt. No. 58). In sum, Grimes claims Warden Marshall retaliated against him for filing grievance #2021117455, as well as past grievances,[9] by holding him in the W-11 Cell from August 16, 2021, to September 3, 2021. (*See* Dkt. No. 58 at 9–10 and 18–20). Grimes acknowledges "I had to stay confined in W-11 Cell for 14 days before being cleared for refusing the medical treatment of [a] C[OVID-19] test." (*Id*. at 9).   However, in Grimes' response to Defendants' motion for summary judgment, Grimes specifies his confinement in the W-11 Cell was prolonged for "a total of 18 days, which is not in accordance with TDCJ's COVID Mitigation [P]olicy and [P]rocedures [that] provide[:] any inmate that refuses the C[OVID-19] test will be placed under a 14-day quarantine period. (Dkt. No. 130 at 1). Regarding this allegation, the Undersigned notes a consecutive fourteen (14) day quarantine beginning on August 16, 2021, would have ended August 30, 2021.

---

[9] Grimes has provided the Court four (4) offender grievance forms as attachments: Step 1 Grievance #2021099224, signed by Grimes April 18, 2021, (Dkt. No. 1-3 at 1); Step 2 Grievance #2021099224, signed by Grimes June 16, 2021, (Dkt. No. 1-3 at 5); Step 1 Grievance #2021117455, signed by Grimes May 28, 2021, (Dkt. No. 1-3 at 3); Step 2 Grievance #2021117455, signed by Grimes August 30, 2021, (Dkt. No. 1-3 at 7). The Undersigned notes there are two (2) attachments for grievance #2021117455, and two (2) attachments for grievance #2021099224. This is because offenders dissatisfied with the step one response may submit a step two form requesting appellate review.

Grimes submitted grievance #2021099224 ("Grievance One") on April 18, 2021. (Dkt. No. 1-3 at 1). In Grievance One, Grimes writes he has "not been afforded opportunity for recreational activities." (*Id*.). Warden Marshall is not mentioned in Grievance One, but Warden Marshall did issue the grievance response dated June 10, 2021. (*Id*. at 2). In the response, Warden Marshall informed Grimes the recreation schedule had been modified due to CDC procedures related to COVID-19. (*Id*. at 2).

Grimes submitted grievance #2021117455 ("Grievance Two") on May 28, 2021. (Dkt. No. 117-1 at 9). In Grievance Two, Grimes writes "this grievance notice concerns Texas Department of Criminal Justice and Cotulla Unit's Dr. Fitts deliberate indifference to serious medical needs." (*Id*.). Warden Marshall is not mentioned in the grievance and did not issue the grievance response.

According to TDCJ Grievance Records for Plaintiff provided by Defendants, while confined in the W-11 Cell, Grimes submitted grievance #2021155227 ("Grievance Three") on August 26, 2021. (Dkt. No. 117-1 at 34–35). In Grievance Three, Grimes admits he refused a COVID-19 test and requests information on the policy rule justifying his quarantine. (*Id*. at 35). He further writes "the light [is] always on 24 hours a day . . . and [he is being forced] to use a toilet that doesn't work." (*Id*. at 35). Warden Marshall is not mentioned in Grievance Three, but Warden Marshall did issue the grievance response dated November 24, 2021. (*Id*. at 35).

Attached to Warden Marshall's motion for summary judgment is inter-office communication from Major Conrad Perales ("Perales"). (Dkt. No. 117-1 at 39). Perales received Grievance Three on November 18, 2020, and interviewed Grimes on

November 20, 2020. (*Id*.). In the inter-office communication, Perales states a review

of the events prior to Grimes' filing Grievance Three demonstrates:

> The Cotulla Unit was scheduled to conduct its Covid Sample Testing on
> August 16, 2021 . . . [d]uring this testing date Mr. Grimes refused to
> take the Covid test and therefore was placed under Medical Isolation for
> 14 days per TDCJ's policy and procedure, within accordance of B 14.52
> Covid Mitigation . . . Due to Mr. Grimes' refusal of the Covid test he was
> reassigned from F-21 bunk to W-11 cell from August 16, 2021 to
> September 3, 2021. After completion of the 14 day quarantine Mr.
> Grimes was medically cleared to be reassigned in General Population.
> Mr. Grimes was removed W-11 Cell and reassigned to J-7 bunk back in
> general population on September 3, 2021.

(Dkt. No. 117-1 at 39).

While still confined in the W-11 Cell, on September 1, 2021, Grimes submitted

two sick call requests. (Dkt. No. 117-2 at 68–69). In the requests, Grimes asks why

he is being held in medical isolation beyond 14 days. (*Id*.). In a response issued on the

same date, Paul Flores, BSN, RN reported "there are no housing restrictions in your

medical file." (*Id*. at 69).

"The invocation of a specific constitutional right is the first element of a

retaliation claim." *Gonzalez v. Moore*, No. 2:21-CV-00295, 2022 WL 18636132 (S.D.

Tex. Aug. 16, 2022), *R. & R. adopted*, No. 2:21-CV-00295, 2023 WL 358247 (S.D. Tex.

Jan. 23, 2023). As the district judge concluded in retaining this claim, the

Undersigned agrees Grimes has a constitutional right to file grievances. *See Morris*,

449 F.3d at 686. Therefore, the first element is satisfied. Warden Marshall raises no

argument contesting whether Grimes can satisfy the third element of his retaliation

claim (a retaliatory adverse act). (Dkt. No. 116 at 14–17). Rather, Warden Marshall

specifically challenges whether Grimes can meet the second element (retaliatory

intent) and the fourth element (causation) of his retaliation claim. (*Id*.).

First, retaliatory intent. While Warden Marshall did issue the Grievance One and Three responses, neither his signature nor anything in the responses themselves constitutes direct evidence Warden Marshall possessed the requisite motivation to retaliate against Grimes for filing grievance forms. In Grimes' response to Defendants' motion for summary judgment, however, Grimes alleges at some point before his prolonged confinement in the W-11 Cell Warden Marshall referred to him as "the grievance filer." (Dkt. No. 130 at 2 and 3). Grimes does not demonstrate the date Warden Marshall referred to him as the "the grievance filer." (*Id*.). This event was also not included in Grimes' verified complaint or more definite statement. (*See* Dkt. Nos. 1 and 58). Additionally, the Undersigned notes—unlike several of Grimes' other submissions to the Court—Grimes' response to Defendants' motion for summary judgment fails to comply with Federal Rule of Civil Procedure 56.

In *Gordon v. Watson*, the Fifth Circuit determined a *pro se* plaintiff's answer to a defendant's motion for summary judgment that fails to comply with Federal Rule of Civil Procedure 56 is insufficient to raise a genuine issue of material fact. 622 F.2d 120 (5th Cir. 1980). As here, *Gordon* concerned the confinement of the plaintiff in a one-man cell. (*Id*. at 123). Once the defendants moved for summary judgment, the plaintiff "filed an unsworn, unverified document styled "[a]nswer to defendants [m]otion for [s]ummary [j]udgment." (*Id*. at 122). The Fifth Circuit found the plaintiff's answer to be "an unsworn statement, which the court may not consider in determining the propriety of summary judgment." (*Id*. at 123). This was despite the

fact that "had it been sworn it would have raised a genuine issue as to the material fact of [the defendant's] motive for . . . incarcerating [the plaintiff] in one-man cells." (*Id.* at 123). Concluding, the Fifth Circuit stated "although pro se litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, we have never allowed such litigants to oppose summary judgments by the use of unsworn materials." (*Id.* at 123).

Still, in *Davis v. Fernandez*, the Fifth Circuit held where a *pro se* plaintiff later declares his testimony to be true and correct—even without using the favored words "under penalty of perjury"—"there is an especially compelling case for the court to exercise its discretion to excuse the error." 798 F.3d 290, 293–94 (5th Cir. 2015); *accord Barker v. Norman,* 651 F.2d 1107, 1128–29 (5th Cir. 1981) (holding that the district court abused its discretion when it granted summary judgment without affording *pro se* party an opportunity to correct an evidentiary deficiency).

In this case, Warden Marshall has not addressed Grimes' allegation Warden Marshall referred to him as "the grievance filer," filing no reply to Grime's response to Defendants' motion for summary judgment. (Dkt. No. 130 at 2 and 3). Based on the foregoing, the Undersigned finds Grimes has alleged facts from which retaliatory intent may plausibly be inferred, satisfying the second element (retaliatory intent) of his retaliation claim.

Next, the element of causation, which requires a showing that "but for the retaliatory motive the complained of incident would not have occurred." *Johnson*, 110 F.3d at 310. Grimes alleges his prolonged confinement in the W-11 Cell occurred due

to his filing grievances, as evidenced by Warden Marshall allegedly referring to Grimes as "'the grievance filer' before . . . prolong[ing his] stay in restrictive housing." (Dkt. No. 130 at 3). As discussed, Grimes does not demonstrate the date Warden Marshall referred to him as the "the grievance filer," however. (*Id.*).

Discussing the chronology of events related to this claim, Grimes points the Court to Grievance One, filed April 18, 2021. (Dkt. No. 130 at 3; *See also* Dkt. No. 1-3 at 1). Grimes states material facts related to Grievance One are being concealed which would show why Warden Marshall referred to Grimes as "the grievance filer.'" (Dkt. No. 130 at 3). Clarifying the alleged retaliatory timeline, and viewing the chronology of events in Grimes' favor:

(1) Grimes filed his Step 1 Grievance #2021099224 ("Grievance One") on **April 18, 2021**. (Dkt. No. 1-3 at 1).

(2) Grimes filed his Step 1 Grievance #2021117455 ("Grievance Two") on **May 28, 2021**. (Dkt. No. 1-3 at 3).

(3) Grimes filed his Step 2 Grievance #2021099224 ("Grievance One") on **June 16, 2021**. (Dkt. No. 1-3 at 5).

(4) Warden Marshall allegedly referred to Grimes as the "'the grievance filer'" on an **unknown date**. (Dkt. No. 130 at 2–3).

(5) Grimes was confined in the W-11 Cell from **August 16, 2021, to September 3, 2021**. (Dkt. No. 130 at 1).

(6) Grimes filed his Step 2 Grievance #2021117455 ("Grievance Two") **August 30, 2021**. (Dkt. No. 1-3 at 7).

(emphasis added). Temporal proximity between the time Grimes filed his grievances and his later W-11 Cell placement does not itself amount to direct evidence of retaliation or a chronology from which retaliation may plausibly be inferred. *See*

*Strong v. Unit HealthCare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007) (holding "temporal proximity is insufficient to prove 'but for' causation"). The mere fact one incident precedes another is not proof of a causal connection because this is the logical fallacy *of post hoc ergo propter hoc* ("after this, therefore because of this").[10] Such temporal proximity alone is insufficient to establish "but for" causation in a prisoner retaliation claim. *Reese*, 322 F. App'x at 383. Further, because Grimes has not provided a date when Warden Marshall allegedly referred to Grimes as "'the grievance filer'" it is an open question as to how much time had passed from this alleged affront before his confinement in the W-11 Cell.

Accordingly, the summary judgment evidence before the Court does not make clear why Grimes' confinement in the W-11 Cell was prolonged for four (4) additional days. Warden Marshall submitted the inter-office communication from Perales indicating Grimes was to be confined for a 14-day quarantine following his refusal of a COVID-19 test. (Dkt. No. 117-1 at 39).  But Warden Marshall has not otherwise addressed why Grimes' confinement lasted 18 days in total. For this reason, the Undersigned has little difficulty concluding that there is at least a genuine dispute of material fact on the fourth element (causation) of his retaliation claim.[11]

Having concluded the first, second and fourth elements of his retaliation claim are satisfied the Undersigned now turns to the third element (a retaliatory adverse act). While Warden Marshall does not contest this element, Grimes must show that

---

[10] *Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) (noting that "the *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence," which is a "false inference"); *Tampa Times Co. v. Nat'l Labor Relations Bd*, 193 F.2d 582, 583 (5th Cir. 1952) ("post hoc ergo propter hoc is not sound logic").
[11] *See also Bibbs v. Early*, 541 F.3d 267, 273–74 (5th Cir. 2008).

the complained of retaliatory act was more than *de minimis* such that "it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris*, 449 F.3d at 686. Here, the summary judgment evidence demonstrates Grimes' placement in the W-11 Cell for four (4) additional days did not deter him from exercising his constitutional right to file grievances.

According to TDCJ Grievance Records for Plaintiff provided by Defendants, while Grimes was housed in the W-11 Cell between August 16, 2021, and September 3, 2021, Grimes filed four grievances.[12] He also received two responses to past grievances.[13] Further, since his release from the W-11 Cell, Grimes has filed at least one new grievance and received further responses to previously filed grievances. (Dkt. No. 117-1 at 96–97); (Dkt. No. 117-1 at 98–99). Thus, because Grimes was not deterred "from further exercising his constitutional rights[,] the Undersigned cannot find the *de minimis* test satisfied. *See Smith v. Hebert*, 533 F. App'x 479, 482 (5th Cir. 2013); *cf. Ibenyenwa v. Wells*, No. 21-40241, 2022 WL 413941 at *1 (5th Cir. Feb. 10, 2022), *cert. denied*, 143 S. Ct. 236 (2022), (affirming the district court's determination that the plaintiff failed to state a claim for retaliation because "[d]espite the defendants' actions, [the plaintiff's] filing of grievances and abusive complaints continued unabated, even during the instant litigation. Any assertion that the defendants 'chilled' [the plaintiff] from exercising a constitutional right is belied by

---

[12] (*See* Dkt. No. 117-1 at 34–35, filed by Grimes on August 19, 2021); (*See* Dkt. No. 117-1 at 53–54, filed by Grimes on August 30, 2021); (*See* Dkt. No. 117-1 at 84–85, filed by Grimes on August 31, 2021); and (*See* Dkt. No. 117-1 at 92–93, filed by Grimes on August 31, 2021).
[13] (*See* Dkt. No. 117-1 at 9–10, date returned to offender: August 27, 2021); (*See* Dkt. No. 117-1 at 28–29, date returned to offender: August 27, 2021).

[the plaintiff's] own actions.").[14]

That being the case, a review of the summary judgment evidences reflects Grimes' confinement in the W-11 Cell being prolonged for four (4) additional days had no chilling effect on Grimes' ability to exercise his right to file grievances.[15] As such, Warden Marshall is entitled to qualified immunity and summary judgment in his favor. *See Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 (5th Cir. 1994) (""Summary judgment should be granted where any essential element of the plaintiff's case is without factual support"); *See also Pearson*, 555 U.S. at 236.

Assuming, *arguendo*, the summary judgment evidence demonstrated a constitutional violation by Warden Marshall, Grimes has not established Warden Marshall's actions were objectively unreasonable in light of the clearly established law at the time of the constitutional violation. *Freeman*, 483 F.3d at 411; *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). In Grimes' response to Defendants' motion for summary judgment, Grimes states this case is similar to "Fugate v. Erdos, 2022 U.S. App. LEXIS 23208." (Dkt. No. 130 at 5). *Fugate v. Erdos* is a case from the Sixth Circuit. No. 21-4025, 2022 WL 3536295 (6th Cir. Aug. 18, 2022). In *Fugate*, the warden imposed three strip searches per day for 30 days while the defendant, Karl Fugate, was kept in a segregated cell. *Id*. at *1. Fugate raised three constitutional claims against the warden: two under the Fourth Amendment and one under the

---

[14] *See also Mitchell v. Denton Cnty.*, No. 4:18-CV-399-ALM-KPJ, 2022 WL 989392, at *7 (E.D. Tex. Feb. 28, 2022), *R. & R. adopted*, 2022 WL 9897819 (E.D. Tex. Mar. 31, 2022) (quoting *Morris*, 449 F.3d at 686).

[15] *See Rojas v. Martinez*, No. 2:18-CV-238, 2020 WL 8083677 at *5 (S.D. Tex. Aug. 25, 2020), *R. & R. adopted*, No. 2:18-CV-238, 2021 WL 76895 (S.D. Tex. Jan. 8, 2021)

Eighth Amendment. *Id*. at *1. The Sixth Circuit affirmed the district court's denial of qualified immunity to the warden at summary judgment. *Id*. at *5. The Sixth Circuit reasoned that the plaintiff identified well established rights not to be subjected to strip searches without a penological justification under the Fourth Amendment, and not to be subjected to strip searches that are maliciously imposed as punishment. *Id*. at 13 and 14.

While a plaintiff need not find a case "directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Supreme Court instructs that the clearly established law "should not be defined 'at a high level of generality.'" *Pauly,* 580 U.S. at 79. It "must be 'particularized' to the facts of the case." *Id*. Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Pauly*, 580 U.S. at 80.

"Plaintiffs have the burden to demonstrate that the law was 'clearly established." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020). There has been no allegation at any point in this case Grimes was ever subjected to a strip search. Therefore, *Fugate* is not on point. "The Supreme Court strictly enforces the requirement to identify an analogous case and explain the analogy." *Joseph*, 981 F.3d at 246.[16] Thus assuming, *arguendo*, the summary

---

[16] *See Cole v. Carson*, 935 F.3d 444, 473 (5th Cir. 2019), *as revised* (Aug. 21, 2019) (Ho & Oldham, JJ., dissenting) (noting thirteen cases in the last sixteen years in which the Supreme Court applied the "extraordinary remedy of a summary reversal" to correct failures to identify clearly established law with specificity).

judgment evidence demonstrated a constitutional violation by Warden Marshall, Grimes fails to meet his burden to show Warden Marshall violated clearly established law.

Finally, Grimes claims Warden Marshall's actions were objectively unreasonable in light of TDCJ's COVID Mitigation [P]olicy and [P]rocedures being "clearly established law/policy." (Dkt. No. 130 at 2). Regarding this argument, the law is clear that "a prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation." *Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009) (citing *Richardson v. Thornton*, 299 F. App'x 461, 462–63 (5th Cir. 2008) ("The failure of the prison to follow its own policies . . . is not sufficient to make out a civil rights claim.")).

## V. RECOMMENDATION

For the foregoing reasons, the Undersigned recommends Defendants' summary judgment motion, (Dkt. No. 116), be **GRANTED** in its entirety. The summary judgment evidence establishes that Grimes' claims against Dr. Fitts and Warden Marshall are subject to dismissal, and that they are entitled to qualified immunity. The Undersigned further recommends Plaintiff's motion for partial summary judgment, (Dkt. No. 131), be **DENIED**.

**The Clerk of the Court shall send a copy of this Order to the Plaintiff via certified mail with a return receipt requested**.

## NOTICE TO PARTIES

The Clerk will file this Report and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Report and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

**SIGNED** on the 5th day of March, 2024.

Christopher dos Santos
United States Magistrate Judge

30