UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| JOHN ALFRED GRIMES | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:22-CV-12 |
| | § | |
| DR. JAMES FITTS AND | § | |
| SEAN MARSHALL | § | |

## ORDER

Before the Court is United States Magistrate Judge Christopher Dos Santos' Report and Recommendation (the "Report") (Dkt. No. 138). In the Report, Judge Dos Santos recommends that the Court grant Defendants' pending summary judgment motion, and deny Plaintiff's pending partial summary judgment motion (*id.* at 1).

Plaintiff filed objections to the Report within the fourteen-day objection period. *See* Fed. R. Civ. P. 72(b)(2). The Court thus reviews the Report *de novo*. *See* 28 U.S.C. § 636(b)(1) (requiring the district judge to make *de novo* determinations as to portions of the magistrate judge's findings and recommendations which are objected to). After a careful review of the filings, the Report, and applicable authorities, the Court **ADOPTS IN PART** and **MODIFIES IN PART** the Report (Dkt. No. 138). Defendants' motion for summary judgment (Dkt. No. 116) is **GRANTED**. Plaintiff's motion for partial summary judgment (Dkt. No. 131) is **DENIED**.

### I. BACKGROUND

The procedural history of this case was laid out in depth in the Magistrate Judge's Report, and the Court will not reiterate it in detail here (*see* Dkt. No. 138 at

1

1–3). In brief, Plaintiff is a *pro se* state inmate who is proceeding *in forma pauperis* against the two remaining Defendants, Dr. James Fitts and Assistant Warden Sean Marshall (*see* Dkt. Nos. 10; 21; 78 at 12 (striking all claims except two against Dr. Fitts and Warden Marshall)). Plaintiff alleges under 42 U.S.C. § 1983 that both Defendants violated his constitutional rights (Dkt. No. 21 at 1–3).[1] He claims Dr. Fitts was deliberately indifferent to various alleged medical conditions which necessitated a bottom bunk designation for Plaintiff at his prison facility (*id.* at 3). He also alleged that Assistant Warden Marshall retaliated against him for exercising his constitutional right to file grievances by placing him in prolonged detention without justification (*see* Dkt. No. 58 at 9, 18, 20).

Defendants filed a motion for summary judgment, asserting qualified immunity and arguing that Plaintiff cannot establish a genuine dispute of material fact as to his claims (*see* Dkt. No. 116 at 1, 3, 16–18). Plaintiff filed a response to Defendants' motion (Dkt. No. 130), as well as a cross-motion for partial summary judgment (Dkt. No. 131), to which Defendants responded (Dkt. No. 137). This Court referred the motions to United States Magistrate Judge Christopher Dos Santos for a report and recommendation (Dkt. No. 125). Judge Dos Santos issued a report and recommendation (Dkt. No. 126) which was later rescinded (Dkt. No. 129) and replaced with the Report now before the Court (Dkt. No. 138).

---

[1] Although Plaintiff's *pro se* complaint does not explicitly reference 42 U.S.C. § 1983, this statute is the proper vehicle for bringing constitutional claims against state officials. *See Burns–Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994) (holding that the district court properly dismissed First and Fourteenth Amendment claims that Plaintiff purported to bring separately from her § 1983 claim) (citing *Hearth, Inc. v. Tex. Dep't of Pub. Welfare*, 617 F.2d 381, 382–83 (5th Cir.1980)).

In the Report, Judge Dos Santos recommends that Defendants' summary judgment motion be granted in its entirety, and that Plaintiff's motion be denied (*see id.* at 29). Plaintiff received a copy of the Report on March 14, 2024, and filed three sets of timely objections to it (*see* Dkt. Nos. 141–44). Plaintiff additionally filed a separate document which simply reiterated his claim that summary judgment should be granted in his favor, in part or in full (*see* Dkt. No. 145 at 1). Lastly, Plaintiff untimely filed a fourth set of objections on May 8, 2024, which the Court nevertheless considered (Dkt. No. 146). The Court has carefully reviewed the Report, Plaintiff's objections, and all relevant filings and caselaw in conducting its *de novo* review. *See* 28 U.S.C. § 636(b)(1).

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A material fact is one that could "affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). And a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

As Judge Dos Santos noted in his Report:

> To properly support a motion for summary judgment, the moving party must identify portions of "the pleadings, depositions, answers to interrogatories, and admissions on file" which demonstrate the absence of a genuine issue of material fact. *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). This absence is shown by exhibiting that the record contains no support for the non-moving party's claim. *Id.*

> To rebut a properly supported motion for summary judgment, the non-moving party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Atkins v. Szymczak*, 710 Fed.Appx. 223, 224 (5th Cir. 2018) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)) . . . . Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If the nonmovant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Stahl*, 283 F.3d at 263.

(Dkt. No. 138 at 4–5).

## III.   DISCUSSION

### A. Deliberate Indifference Claim Against Dr. Fitts

Plaintiff alleges that Dr. Fitts was deliberately indifferent to Plaintiff's various alleged medical conditions (*see* Dkt. Nos. 21 at 3; 130 at 6), a claim which arises under the Eighth Amendment. *See Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). He alleges that Dr. Fitts provided inadequate treatment for Plaintiff's: (i) seizures; (ii) falls from his top bunk bed; (iii) dizziness, bodily pain, and movements during sleep; (iv) obesity and uncontrollable appetite; (v) "organ or intestine poking out from straining to climb the top bunk"; and (vi) vitamin D deficiency (*see* Dkt. Nos. 1-3 at 3–4; 21 at 3).

Deliberate indifference is "an extremely high standard to meet." *Zaunbrecher v. Gaudin*, 641 F. App'x 340, 344 (5th Cir. 2016) (quoting *Gobert*, 463 F.3d at 346). An official is deliberately indifferent to an incarcerated plaintiff's needs if the official (a) knows that the inmate faces "a substantial risk of serious harm" and (b) "disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Serious harm is not just any harm: the medical need must be "so apparent that even laymen would recognize that care is required."

4

*Rogers v. Jarrett*, 63 F.4th 971, 976 (5th Cir. 2023) (quoting *Gobert*, 463 F.3d at 345 n.12). A showing of deliberate indifference "requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Grogan v. Kumar*, 873 F.3d 273, 278 (5th Cir. 2017) (quoting *Gobert*, 463 F.3d at 346).

Here, Plaintiff alleges that Dr. Fitts was deliberately indifferent to a multitude of medical conditions (*see* Dkt. No. 138 at 12–15), but he fails to establish a genuine dispute of material fact regarding the treatment he received for any of them.

Seizures: After Plaintiff complained of having a seizure, Dr. Fitts saw him the next day (*see* Dkt. No. 117-2 at 36–37, 72–73). Dr. Fitts noted that Plaintiff had no history of seizures and did not seem to be in a post-seizure state (*see* Dkt. Nos. 116 at 9; 117-2 at 36–37). Thus, Plaintiff's claim that "Dr. Fitts refused to treat him" is without merit (*see* Dkt. No. 130 at 6).

Falls from top bunk and weight: Plaintiff complained that he fell from his top bunk and could not reach the top bunk due to his weight (*see* Dkt. No. 117-1 at 15). He was seen by Dr. Fitts for these complaints two days later (Dkt. No. 117-2 at 42–43). Dr. Fitts concluded Plaintiff was a "healthy appearing male," and that he was unable to modify Plaintiff's bed assignment (*see* Dkt. Nos. 116 at 8, 117-2 at 42–43).

Bulging organs: Plaintiff complained of abdominal pain and Dr. Fitts treated him, assessing that Plaintiff had an abdominal strain and prescribing ibuprofen (Dkt. No. 117-1 at 16, 63). Plaintiff later complained that his intestine was poking out (Dkt.

5

No. 117-2 at 39). Dr. Fitts saw Plaintiff for this complaint two days later (*id.*). He noted no new specific measures and concluded that Plaintiff had no true need for a bottom bunk restriction (*id.*). When Plaintiff later complained of back, abdominal, leg, and knee pain he was again seen by Dr. Fitts two days later, and Dr. Fitts again concluded he was unable to grant Plaintiff a bottom bunk housing restriction (*id.* at 32, 71).

Dizziness, bodily pain, and movements during sleep: Plaintiff later complained of swelling and cracking in his knee, dizziness, pain, and involuntary movements during sleep (*see id.* at 30–31). Dr. Fitts saw him and noted no obvious swelling; the chief nurse concurred with his assessment (*id.*). Dr. Fitts prescribed Plaintiff hypertension medication (*id.*).

Vitamin D deficiency: Plaintiff complained of a vitamin D deficiency (*see* Dkt. No. 1-3 at 5). But an appellate review concluded that Plaintiff's labs did not show a vitamin D deficiency (*id.* at 8).

This history of Plaintiff's medical treatment does not establish a genuine dispute of material fact as to whether Dr. Fitts acted with deliberate indifference to Plaintiff's medical needs. Dr. Fitts adequately tended to Plaintiff's medical needs, seeing Plaintiff seven times in less than two months (*see* Dkt. No. 117-2 at 30–43). Dr. Fitts always saw Plaintiff promptly, and Plaintiff appeared healthy on all seven occasions (*see id.*). Even assuming *arguendo* that Plaintiff was at substantial risk of serious harm and Dr. Fitts was aware of that risk, Dr. Fitts' consistent responses to

Plaintiff's complaints would not support a finding that he was deliberately indifferent to Plaintiff's medical needs.

Plaintiff's objections to the Report, lengthy as they are, do nothing to shift this analysis. Objections to a report and recommendation must identify specific portions of the report and the basis for the objections. Fed. R. Civ. P. 72(b)(2); *Green v. Snap RTO*, No. 4:23-CV-04452, 2024 WL 1903928, at *1 (S.D. Tex. Apr. 30, 2024) (citing *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc), *overruled on other grounds*, *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc)). The district court need not consider frivolous, conclusory, or general objections. *CGI Logistics, LLC v. Fast Logistik*, No. 5:23-CV-43, 2023 WL 8313341, at *2 (S.D. Tex. Dec. 1, 2023) (Garcia Marmolejo, J.) (citing *Nettles*, 677 F.2d at 410 n.8).

Plaintiff does no more than lodge general objections to the Report, for instance objecting to the finding that Dr. Fitts did not violate a constitutional right (Dkt. Nos. 142 at 6; 146 at 4). The rest of his objections, as relates to his deliberate indifference claim, amount to a rehashing of the medical history detailed above, and do not identify specific portions of the Report that Plaintiff disagrees with (*see generally*, Dkt. Nos. 142–143; 146). Further, Plaintiff does not dispute that Dr. Fitts saw him seven times in less than two months for various complaints, yet frivolously asserts that Dr. Fitts "refus[ed] to treat me, ignore[ed] my complaints and/or disregard[ed] the fact that I had a seizure" (Dkt. No. 142 at 7; *see also* Dkt. No. 146 at 3 (objecting to Dr. Fitts taking "no measures" after seeing Plaintiff)). The Court has little

7

difficulty, based on the extensive record of Plaintiff's medical treatment, rejecting this baseless assertion. Plaintiff's objections (Dkt. Nos. 142–43; 146) are **OVERRULED**.

Plaintiff's displeasure with Dr. Fitts' diagnoses, treatment, and conclusion that Plaintiff had no true medical need for a bottom bunk does not make out an Eighth Amendment claim. Plaintiff alleges that Dr. Fitts made a "plain error" in his treatment of Plaintiff by, for instance, diagnosing his complaint of "an organ or intestine poking out" as an abdominal muscle strain (*see* Dkt. Nos. 117-2 at 39; 143 at 2). He also clearly disagrees with Dr. Fitts' assessment that Plaintiff did not appear to have had a seizure after Plaintiff complained of having one (*see* Dkt. Nos. 116 at 9; 117-2 at 36–37; 142 at 6–7). But Plaintiff's disagreement with Dr. Fitts' medical opinion does not establish deliberate indifference. *See, e.g., Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) ("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.") (citations omitted). Therefore, Plaintiff has not established a genuine dispute of material fact as to this claim, and summary judgment is warranted in favor of Defendant Dr. Fitts.

### B. Retaliation Claim Against Assistant Warden Marshall

Plaintiff claims that Assistant Warden Marshall, disgruntled by Plaintiff's filing of grievance forms, prolonged by four days his fourteen-day medical quarantine, which was imposed because Plaintiff refused to take a COVID-19 test (*see* Dkt. Nos. 58 at 9–10, 18–20; 130 at 1). Plaintiff has admitted that he refused to take a COVID-19 test, which Warden Marshall asserts was the reason Plaintiff was assigned to the W-11 quarantine cell, in accordance with prison policy (*see* Dkt. No. 117-1 at 34, 39).

In his Report, Judge Dos Santos recommends granting the Warden's motion for summary judgment on this claim, finding that Plaintiff's injury was *de minimis*, and that the Warden was entitled to qualified immunity (*see* Dkt. No. 138 at 26–27, 29).

"[A] prison official may not retaliate against or harass an inmate for . . . complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995) (citations omitted). To state a retaliation claim, a prisoner must allege "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). "Prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166).

As this Court has already concluded (*see* Dkt. No. 78 at 6), and as noted by Judge Dos Santos in his Report (Dkt. No. 138 at 21), Plaintiff has properly invoked a specific constitutional right: his right to file grievances with his carceral facility. *See Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (citing *Woods*, 60 F.3d at 1164). Thus, the first element of his retaliation claim is satisfied. In addition, Plaintiff must demonstrate (i) retaliatory intent; (ii) a retaliatory adverse act; and (iii) causation. *See Reese*, 322 F. App'x at 383 (citation omitted).

<u>Retaliatory Intent</u>: In Plaintiff's response to Defendants' motion for summary judgment, he alleged for the first time that, sometime before his confinement was

9

prolonged, Warden Marshall referred to him as "the grievance filer" (*see* Dkt. No. 130 at 2–3 ("Warden Marshall called Plaintiff 'the grievance filer' before retaliation motivated prolonged and extended Plaintiff's stay in restrictive housing.")). In his Report, Judge Dos Santos found that, although this allegation was unsworn, it was still enough to plausibly infer retaliatory intent for the prolonged detention (Dkt. No. 138 at 22–23). In his objections to the Report, Plaintiff claims, in contradiction with his previous factual assertions, that the Warden made the "grievance filer" comment on September 1, 2021, two days *after* the fourteen-day quarantine period ended (*see* Dkt. No. 142 at 10). Despite this inconsistency, the Court still agrees with the Report's conclusion that Plaintiff has adequately made out the intent prong of his retaliation claim (*see* Dkt. No. 138 at 23). The Warden's alleged comment could create a genuine dispute of material fact as to whether the Warden intended to prolong Plaintiff's detention in retaliation for Plaintiff filing grievances.

<u>Causation</u>: Because the retaliatory adverse act element requires more intensive analysis, the Court addresses the causation element first. Proving causation requires demonstrating that "but for the retaliatory motive the complained of incident would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citing *Woods*, 60 F.3d at 1166). As the Report noted, mere temporal proximity between Plaintiff filing grievances and his detention in the W-11 cell does not establish causation (Dkt. No. 138 at 24–25). *See Reese*, 322 F. App'x at 383 (citing *Strong v. Univ. Healthcare Sys.*, 482 F.3d 802, 808 (5th Cir. 2007)). However, given that the Warden failed to address why Plaintiff's detention lasted eighteen days

instead of fourteen days, Judge Dos Santos "ha[d] little difficulty concluding that there is at least a genuine dispute of material fact" as to the causation element (*id.* at 25). This Court agrees with Judge Dos Santos' conclusion.

Retaliatory Adverse Act: Although the Warden did not dispute this element, Judge Dos Santos found in his Report that Plaintiff's four-day prolonged detention was *de minimis* (*see* Dkt. No. 138 at 25–27). Under the *de minimis* test, "[r]etaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *See Morris*, 449 F.3d at 686. Judge Dos Santos noted that while Plaintiff was housed in the W-11 cell from August 16, 2021, to September 3, 2021, he filed no fewer than four grievances (*see* Dkt Nos. 117-1 at 34–35, 53–54, 84–85, 92–93; 138 at 26). And after he was released from the W-11 cell, Plaintiff filed at least one new grievance (*see* Dkt. Nos. 117-1 at 9–10; 138 at 26). Judge Dos Santos concluded that, because Plaintiff continued to file grievances while he was in detention, he was not deterred from exercising his constitutional right to file grievances, and thus failed to state a retaliation claim (Dkt. No. 138 at 26–27) (citing, *inter alia*, *Ibenyenwa v. Wells*, No. 21-40241, 2022 WL 413941, at *1 (5th Cir. Feb. 10, 2022), *cert. denied*, 143 S. Ct. 236 (2022)).

Plaintiff does not muster any serious objections to the Report's finding on this front, failing to address the *de minimis* standard or Judge Dos Santos' finding that he continued to file grievances during and after his administrative detention (*see generally*, Dkt. Nos. 142–44). Instead, he pivots to arguing that his prolonged confinement "chilled [his] ability to exercise [his] right to 1. go to the Law Library, 2.

11

have recreation activities, 3. right to have access to religious services, 4. the right to not be subjected to retaliatory maliciously imposed restrictive housing as punishment without any penological justification[,] 5. Even [his] 14th Amendment right to not be deprived of liberty without due process of law" (Dkt. No. 142 at 11).

The main problem with these new arguments is that they bear no connection to the Warden's "grievance filer" comment, which was the only basis for this Court to find that Plaintiff had alleged a retaliatory intent. Further, they are unrelated to Plaintiff's invoked constitutional right to file grievances. It is also unclear why Plaintiff's prolonged detention, supposedly motivated by the Warden's distaste for Plaintiff's grievance filing, would deter Plaintiff from going to the law library, engaging in recreation activities, or accessing religious services, rather than deter him from filing grievances. And his claims based on his due process rights and his right to not be placed in administrative detention without penological justification fail because these are protective rights, not rights which Plaintiff can *exercise*, and thus be deterred from exercising. Lastly, Plaintiff has not set forth caselaw supporting any of these propositions. "Mere conclusionary allegations of retaliation will not withstand a summary judgment challenge." *Woods*, 60 F.3d at 1166. Thus, Plaintiff's objections (Dkt. Nos. 142–44) are **OVERRULED**.

Nevertheless, based upon precedent, a four-day prolonged detention may not be *de minimis*, and thus there are grounds to **MODIFY** the Report's conclusion that Plaintiff's four-day prolonged detention was *de minimis* (*see* Dkt. No. 138 at 26–27). *See Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (holding that disciplinary

sanctions in the form of twenty-seven days of commissary and cell restrictions were not *de minimis*); *see also Rivera v. Salazar*, No. C-04-552, 2005 WL 1828594, at *5 (S.D. Tex. July 29, 2005), *subsequently aff'd*, 221 F. App'x 334 (5th Cir. 2007) (twenty-two days' administrative segregation not *de minimis*); *see also Huff v. Jackson*, No. CA C-11-149, 2012 WL 845066, at *9 (S.D. Tex. Mar. 12, 2012) ("[P]rolonged assignment to administrative segregation . . . would deter the ordinary person from further exercising his right to pursue administrative remedies."); *see also Thaddeus–X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) ("[A]n action comparable to transfer to administrative segregation would certainly be adverse.").

To pass the *de minimis* test, a retaliatory act against a prisoner must be "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris*, 449 F.3d at 686. The *de minimis* test as expressed in *Morris* is an objective test: that is, the complained-of act must be capable of deterring "a person of ordinary firmness" from further exercising his constitutional right to file grievances. *See id.*

Nonetheless, some courts, including the Fifth Circuit in *Ibenyenwa*, have apparently reasoned on an "actual deterrence" basis: that is, they have studied whether the adverse act actually deterred the plaintiff from filing grievances. *See Ibenyenwa*, 2022 WL 413941, at *1 ("Despite the defendants' actions, Ibenyenwa's filing of grievances and abusive complaints continued unabated, even during the instant litigation. Any assertion that the defendants 'chilled' Ibenyenwa from exercising a constitutional right is belied by Ibenyenwa's own actions."); *see also Koh*

*v. Kane*, No. 5:17-CV-206-BQ, 2018 WL 10075492, at *6 (N.D. Tex. Jan. 17, 2018) ("Nor has Koh established that Defendants' actions in fact deterred him from further exercising his constitutional rights."); *Stephenson v. Dretke*, No. CIV A G-03-443, 2007 WL 1729641, at *3 (S.D. Tex. June 12, 2007) (plaintiff "was clearly not deterred from prosecuting this lawsuit"); *Green v. Hamilton*, No. A-07-CA-774-LY, 2007 WL 2815643, at *3 (W.D. Tex. Sept. 25, 2007) ("There is no evidence that Plaintiffs were silenced in any manner."); *Rojas v. Martinez*, No. 2:18-CV-238, 2020 WL 8083677, at *5 (S.D. Tex. Aug. 25, 2020), *report and recommendation adopted*, No. 2:18-CV-238, 2021 WL 76895 (S.D. Tex. Jan. 8, 2021) ("A review of the competent summary judgment evidence reflects that the disciplinary case filed by Martinez against Plaintiff had no chilling effect on Plaintiff's ability to exercising his right to file grievances."). *Ibenyenwa* is unpublished, and thus is not precedent except under limited circumstances not applicable here. *See* 5th Cir. R. 47.5. But the Fifth Circuit's reasoning of course holds persuasive value for this Court in any context.

In contrast with the opinions cited above, in *Villasana v. Newman*, the court contended with and rejected an "actual deterrence" argument, reasoning thusly under the *Morris* standard:

> [T]o the extent defendants argue *Morris* stands for the proposition that plaintiff's allegation of retaliatory acts are *de minimis* as they did not discourage plaintiff from continuing to pursue his grievances against defendant Newman even after the false disciplinary report was filed, this Court can find no support in *Morris* for that proposition. As *Morris* states, the standard is whether the penalty for the exercise of constitutional rights has the *potential* to deter the inmate from the future exercise of those rights. The fact that it did not actually deter plaintiff in the present case from further exercising his constitutional rights appears to be irrelevant.

No. 9:17-CV-20, 2019 WL 4309048, at *5 (E.D. Tex. Aug. 12, 2019), *report and recommendation adopted*, No. 9:17-CV-20, 2019 WL 4305749 (E.D. Tex. Sept. 10, 2019) (citation omitted).

> The *Huff* court also persuasively rejected an "actual deterrence" argument:
>
> In Defendants' reply brief, they maintain that Plaintiff's claims of retaliation are not actionable because he was not actually deterred from exercising his constitutional rights, *i.e.*, filing grievances. Apparently, they maintain that all acts of retaliation would be *de minimis* if any complainant attempts to seek recovery through the grievance of legal mechanism. Such a proposition is inconsistent with the very concept of retaliation as a legal cause of action. Defendants cannot respond to a retaliation claim merely by asserting that plaintiffs only suffered a *de minimis* injury because they were not actually deterred from seeking administrative or legal relief, especially when the successful litigation of a retaliation claim presupposes that the prisoner will properly exhaust his administrative grievances before filing for legal relief in court. In short, Plaintiff need not show that he was actually deterred from filing grievances; he merely needs to show that an ordinary person would be deterred from further exercising his rights. *Morris*, 449 F.3d at 686.

*Huff*, 2012 WL 845066, at *9 n.4 (cleaned up).

Thus, there appears to be some disagreement among courts interpreting the *Morris* standard in this context, with no authoritative guidance. Judge Dos Santos reasonably relied on *Ibenyenwa* in concluding that Plaintiff failed to allege a retaliatory adverse act (Dkt. No. 138 at 26–27). However, given that *Morris* articulates an objective standard, this Court feels compelled to ground its reasoning in an objective standard, not in an actual deterrence analysis. This approach makes good sense: the risk of employing a rationale based purely on actual deterrence is that courts may in effect hold a plaintiff's exercise of his constitutional rights against him.

The fact that Plaintiff was not deterred from filing grievances during and after his allegedly prolonged detention may be probative of whether a person of ordinary firmness would likewise not be deterred. Assuming Plaintiff is a person of ordinary firmness, it could be enough to dispose of his claim. *See Carr v. Stephens*, No. CV H-15-0715, 2016 WL 9108038, at *6 (S.D. Tex. Mar. 2, 2016) ("Carr's retaliation claim is not actionable because it did not deter Carr, a person of ordinary firmness, from further exercising his constitutional rights."). Nevertheless, in the absence of binding authority, the reasoning in *Hart*, *Rivera*, and *Huff* leads this Court to conclude that a four-day period of prolonged detention could plausibly deter a person of ordinary firmness from further exercising his right to file grievances. Thus, Plaintiff has adequately raised a genuine dispute of material fact as to whether the Warden engaged in a retaliatory adverse act. The Report's conclusion to the contrary (Dkt. No. 138 at 26–27) is **MODIFIED**.

However, this does not change the outcome in this case. The lack of clarity in the law means Warden Marshall must retain qualified immunity. *See Thornton v. Merch.*, No. CIV.A. H-10-616, 2012 WL 3063894, at *6 (S.D. Tex. July 26, 2012), *aff'd*, 526 F. App'x 385 (5th Cir. 2013) (lack of clarity in the law regarding whether exclusion from the craft shop would deter an inmate from exercising his right to file grievances entitled prison officer to qualified immunity).

Judge Dos Santos likewise concluded that Plaintiff had failed to overcome qualified immunity, noting that the only case Plaintiff had pointed to was an unpublished Sixth Circuit case that was not factually on point (*see* Dkt. No. 138 at

27–28) (citing *Fugate v. Erdos*, No. 21-4025, 2022 WL 3536295 (6th Cir. Aug. 18, 2022)). As Judge Dos Santos described in his Report:

> In *Fugate*, the warden imposed three strip searches per day for 30 days while the defendant, Karl Fugate, was kept in a segregated cell. *Id.* at *1. Fugate raised three constitutional claims against the warden: two under the Fourth Amendment and one under the Eighth Amendment. *Id.* at *1. The Sixth Circuit affirmed the district court's denial of qualified immunity to the warden at summary judgment. *Id.* at [*13–14]. The Sixth Circuit reasoned that the plaintiff identified well established rights not to be subjected to strip searches without a penological justification under the Fourth Amendment, and not to be subjected to strip searches that are maliciously imposed as punishment. *Id.* at [*13–14].

(Dkt. No. 138 at 27–28).

As Judge Dos Santos further noted, "[t]here has been no allegation at any point in this case [that Plaintiff] was ever subjected to a strip search" (*id.* at 28). That was indeed true when Judge Dos Santos wrote his Report. However, in his objections to the Report, Plaintiff alleges for the first time that he "was subjected to [a] strip search while after being held beyond a 14 day quarantine policy" (Dkt. No. 144 at 2). If that were true, one would imagine that Plaintiff would have so alleged in the dozens of filings he has submitted in this case, which has been pending for over two years. Instead, it appears more likely that Plaintiff, under penalty of perjury, has fabricated this incident in response to the Report, in an attempt to make the facts of this case hew more closely to *Fugate*.

If so, this is a misguided attempt, not only because Plaintiff appears to have made a false statement to the Court, but also because *Fugate* is unpublished, out-of-circuit precedent, which cannot serve as clearly established law. *See Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) (rights can be clearly established only by

17

controlling authority or robust consensus of cases of persuasive authority) (citation omitted). And even if *Fugate* could serve to clearly establish Plaintiff's rights, it is not factually similar to this case, as the plaintiff in *Fugate* was subjected to three strip searches per day for thirty days, while Plaintiff has only alleged that he was subjected to one strip search (*see* Dkt. No. 144 at 2). *See* 2022 WL 3536295, at *1. Thus, *Fugate* could not have put the Warden on notice that a single strip search would violate clearly established law. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (to clearly establish a right, "existing precedent must have placed the statutory or constitutional question beyond debate") (citations omitted). Therefore, Plaintiff has not carried his burden to demonstrate that Warden Marshall violated his clearly established rights, and the Warden's motion for summary judgment (Dkt. No. 116) will be **GRANTED**.

## IV.     MISCELLANEOUS FILINGS

As the Court discussed in a previous order, Plaintiff has submitted numerous frivolous filings in this case (*see* Dkt. No. 74 (denying twelve of Plaintiff's motions as frivolous)). The Court expressed its concern that "Plaintiff's numerous filings have 'clog[ged] the judicial machinery with meritless litigation,' which amounts to an abuse of 'an already overloaded' docket" (*id.* at 5) (quoting *Farguson v. Mbank Hous., NA*, 808 F.2d 358, 359 (5th Cir. 1986)). The Court noticed Plaintiff that if he continued to submit frivolous filings, the Court could impose sanctions, including dismissal of this lawsuit (*id.* at 5–6) (citing *Bryson v. United States*, 553 F.3d 402, 403–04 (5th Cir. 2008) (affirming dismissal where plaintiff was a serial filer and disobeyed court orders on numerous occasions). *See also Coghlan v. Starkey*, 852 F.2d 806, 817 n.21

(5th Cir. 1988) (federal courts have inherent authority to sanction litigants for frivolous or repetitive filings) (collecting cases); *McPherson v. Tex. Bd. of Pardons & Paroles*, No. 2:21-CV-177, 2021 WL 5548564, at *2 (S.D. Tex. Aug. 20, 2021), *report and recommendation adopted*, No. 2:21-CV-177, 2021 WL 5036012 (S.D. Tex. Oct. 29, 2021) (court has inherent authority to "'levy sanctions in response to abusive litigation practices,' especially where a *pro se* litigant has a history of submitting multiple frivolous claims") (quoting *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993)) (other citations omitted).

Plaintiff did not heed the Court's warning. Instead, Plaintiff filed well over a dozen new frivolous motions, which the Court compiled in a miscellaneous action to partition Plaintiff's meritless filings.[2] Most seriously, Plaintiff filed a motion with what appeared to be a blood-soaked Bible page as an exhibit (5:22-mc-157: Dkt. Nos. 13; 13-2). Given the potential biohazards of Plaintiff's filings, the Court directed the United States Marshals Service to screen any of Plaintiff's new filings (5:22-mc-157: Dkt. No. 14). The logistical problems this created further stretched the Court's resources and diverted them away from other matters on its busy docket.

Plaintiff "is not entitled to monopolize this Court's time and resources, disrupt the disposition of this case, and subject Defendant to unnecessary litigation costs by filing frivolous motions in bad faith." *See O'Hara v. Travelers, Also Named, the Auto. Ins. Co. of Hartford, Conn. (Insurer)*, No. 2:11-CV-208-KS-MTP, 2012 WL 12884579, at *1 (S.D. Miss. July 20, 2012). Plaintiff "has exhausted the Court's leniency." *See*

---

[2] The miscellaneous action is styled *Grimes v. Fitts*, 5:22-mc-157.

*id.* Plaintiff's contumacious conduct warrants sanctions pursuant to Federal Rules of Civil Procedure 11(b)(1), 11(c), and the Court's inherent power. *See id.* The Court has already found in favor of Defendants on their summary judgment motion, but Plaintiff's conduct in this litigation provides another basis to dismiss his suit. *See Bryson*, 553 F.3d at 403.

Plaintiff's motions in the miscellaneous case (5:22-mc-157: Dkt. Nos. 2, 3, 4, 5, 6, 8, 12, 13, 17, 18, 20, 21, 22, 24, 25) are hereby summarily **DENIED**, and the Clerk of Court is **DIRECTED** to **TERMINATE** miscellaneous action 5:22-mc-157.

## V.  CONCLUSION

Accordingly, the Court hereby **ADOPTS** the Report (Dkt. No. 138) **IN PART** and **MODIFIES** it **IN PART**. Defendants' motion for summary judgment (Dkt. No. 116) is **GRANTED** in its entirety. Plaintiff's motion for partial summary judgment (Dkt. No. 131) is **DENIED**. The Clerk of Court is **DIRECTED** to **TERMINATE** this civil action, and the corresponding miscellaneous action, 5:22-mc-157, *John Alfred Grimes v. Dr. James Fitts*.

It is so **ORDERED**.

**SIGNED** May 21, 2024.

Marina Garcia Marmolejo
United States District Judge